UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MATTIE M. COLE                                              PLAINTIFF

VS.                              CIVIL ACTION NO. 3:14CV844TSL-RHW

FIRST WARREN CORP. d/b/a
HERITAGE HOUSE RETIREMENT CENTER                            DEFENDANT

                    MEMORANDUM OPINION AND ORDER

     This cause is before the court on the motion of defendant
First Warren Corp. d/b/a Heritage House Retirement Center
(Heritage House), for summary judgment pursuant to Rule 56 of the
Federal Rules of Civil Procedure.  Plaintiff Mattie M. Cole, who
is now proceeding in this cause *pro se*, has responded in
opposition to the motion.  The court, having considered the
memoranda of authorities, together with attachments, submitted by
the parties, concludes that defendant's motion is well taken and
should be granted.

     Heritage House is an assisted living and residential living
facility where plaintiff Mattie Cole has been employed as a
resident attendant since 1993.  Cole, who is African-American,
filed the present action against Heritage House under Title VII of
the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C.
§ 1981, alleging claims of retaliation and hostile work
environment based on race.  Heritage House seeks summary judgment
on both claims.

Background

Cole's complaint in this cause centers on alleged discrimination and harassment by Kim Carr, who was hired by Heritage House in May 2013 to fill the newly-created position of Administrative Director. According to Cole, the harassment started soon after Carr's installment as Administrative Director and following an incident in June 2013 in which Cole accused Carr of having committed a racist act. According to Cole, on that occasion, Carr approached her and an African-American co-worker as they were eating their meal at a table in the library and told them that employees were no longer allowed to eat in the library. Cole, who explains she had been eating at that same table in the library for more than fifteen years, complained to Carr that this was a racist act, since just two days earlier, she had seen Carr and another white employee sitting and eating at the same table. Carr responded that this was a new rule and asked Cole whether she was calling her a racist; Cole stated she was not but that Carr's actions were racist. Following this confrontation, the two immediately went to talk to the facility's administrator, Joyce Hubbard. Hubbard confirmed that there was a new rule against employees eating in resident-only areas, but she told Carr that the rule had to be applied equally.

Cole alleges that following this incident, Carr regularly intimidated and harassed her. Eventually, on May 6, 2014, Cole

2

filed a charge with the Equal Employment Opportunity Commission
(EEOC) complaining of race discrimination and retaliation,
alleging that since being accused of a racist act, Carr had
harassed and intimidated her on a continuing basis.  After
concluding its investigation, the EEOC issued a notice of right to
sue on August 29, 2014.  EEOC documents reflect that the Agency
concluded that Cole's allegation regarding the alleged racist act
relating to the June 2013 library incident was untimely, and,
beyond that, its investigation failed to disclose incidents that
rose to the level of a hostile work environment.  Cole, through
counsel, filed the present action on October 29, 2014, alleging
she has been subjected to a racially hostile work environment and
has been harassed and intimidated in retaliation for her complaint
of race discrimination relating to the library incident.  Since
that time, Cole, who remains employed by Heritage House, has filed
a second EEOC charge, in May 2015, in which she alleges she has
been subjected to retaliation for filing her prior EEOC charge.

   Title VII Defenses

   Cole has brought both her claims – for hostile work
environment based on race and for retaliation – under Title VII
and § 1981.  Title VII and § 1981 prohibit employers from taking
adverse employment actions against employees on the basis of

race.[1]  They also prohibit retaliation against an employee who has engaged in protected activity, which includes complaining of alleged discrimination.[2]  In general, in the employment context, the same standards that apply to race discrimination and retaliation claims under Title VII apply to such claims under § 1981.  See DeCorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007) ("Claims of racial discrimination in employment, pursuant to 42 U.S.C. § 1981, are governed by the same analysis as that employed for such claims under Title VII."); Cobb v. Singing River Health Sys., No. 1:11CV32-LG-RHW, 2012 WL 1155246, at *4 (S.D. Miss. Apr. 5, 2012) ("The same analysis is utilized for retaliation claims asserted pursuant to Title VII [and] 42 U.S.C. § 1981...."). There is, however, one substantive difference between the two

---

[1]     See 42 U.S.C. § 2000e-2(a)(1) (making it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... race"); 42 U.S.C. § 1981(a) (prohibiting racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship").

[2]     See 42 U.S.C. § 2000e-3(a) (making it unlawful to discriminate against any individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"); CBOCS West, Inc. v. Humphries, 553 U.S. 442, 445, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008) (holding that § 1981 prohibits not only racial discrimination but also retaliation against those who oppose it).

statutes, namely, their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies.  Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005).  In this regard, Title VII requires an individual to file a complaint with the EEOC within 180 days of the occurrence of the discriminatory or retaliatory act.[3]  In addition, a Title VII plaintiff must exhaust all administrative remedies.  E.E.O.C. v. Boh Bros. Const. Co., L.L.C., 731 F.3d 444, 466 (5th Cir. 2013) (citation omitted).  "Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'"  Filer v. Donley, 690 F.3d 643, 647 (5th Cir. 2012) (quoting Pacheco v. Mineta, 448 F.3d 783, 795 (5th Cir. 2006)).

In its motion, Heritage House argues with respect to Cole's Title VII claim that a number of the incidents about which she complains are not properly before the court as they occurred more than 180 days prior to her EEOC charge.  It further contends that she has not exhausted her claims as to alleged incidents which occurred *after* the EEOC concluded its investigation and issued its

---

[3]     See 42 U.S.C. § 2000e-5(e).

notice of right to sue and that accordingly, those incidents may not be considered by the court in evaluating her claims.

Cole's claim for race discrimination is based on a hostile work environment theory.  The Supreme Court has held that a party must file a claim based on a *discrete* retaliatory or discriminatory act within 180 days of such act or lose the ability to recover for it, since a discrete act will have "occurred" on the day that it "happened."  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).  However, "[h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct" so that "[t]he 'unlawful employment practice' ... cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  Id. at 115, 122 S. Ct. 2061.  Thus, "[u]nlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim 'is comprised of a series of separate acts that collectively constitute one "unlawful employment practice."'"  Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009) (quoting Morgan, 536 U.S. at 116, 122 S. Ct. 2061).  "It does not matter ... that some of the component acts of the hostile work environment fall outside the statutory

time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Morgan, 536 U.S. at 117, 122 S. Ct. 2061.  For this continuing violation doctrine to apply, though, the "separate acts" must be related and the violation must be continuing, without any intervening action by the employer to sever the connection.  Stewart, 586 F.3d at 328.  These requirements are easily met here as to each of the alleged incidents which occurred prior to Cole's May 2014 EEOC charge and while that charge was pending:  each incident involved alleged harassment by the same individual, Kim Carr; and there was no intervening act to sever the connection between the incidents.

Regarding defendant's exhaustion argument, it appears that plaintiff cannot be found to have exhausted her administrative remedy as to alleged incidents which post-dated the conclusion of the EEOC's investigation and issuance of a notice of right to sue. A Title VII complaint "'may encompass any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation *during the pendency of the case before the Commission*.'"  Moody v. East Miss. State Hosp., Civ. Action No. 4:08-cv-48-DPJ-FKB, 2010 WL 3359549, at *3 (S.D. Miss. Aug. 23, 2010) (quoting Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 711 (5th Cir.

7

1994)); id. at *4 (stating that "events allegedly occurring after the EEOC concluded its brief investigation ... would not reasonably be expected to grow out of this Charge or investigation"); see also O'Neal v. Roadway Express, 181 F. App'x 417, 419-20 (5th Cir. 2006) (holding that in absence of evidence that EEOC either was constructively or actually aware of incidents that occurred after the plaintiff filed his EEOC charge, it was not reasonable to expect that the EEOC would have investigated those incidents and they were thus unexhausted).

However, assuming for the sake of argument that events which post-dated the EEOC process but were part of an alleged continuing violation could be considered, in this case plaintiff has identified only a few alleged incidents that post-dated conclusion of her original EEOC proceeding which are arguably related to the earlier incidents; and those incidents, even if considered, add nothing of substance to her hostile work environment claim.[4]  That

---

[4]   Plaintiff's list of alleged incidents of harassment set forth in an interrogatory response includes an assertion that in October 2014, she reported to Administrator Hubbard that Carr had engaged in serious misconduct relating to a resident; and that on October 31, 2014, her nursing supervisor asked Hubbard whether she had reported this misconduct to the appropriate authorities. These allegations do not involve any actions taken against or concerning Cole and accordingly are not even relevant to, much less related to, her hostile work environment claim.

Cole also testified by deposition that in May 2015, Hubbard issued her a disciplinary warning relating to alleged resident complaints.  Cole subsequently filed an EEOC charge claiming that the disciplinary warning was unwarranted and was discriminatory and retaliatory.  A disciplinary warning from Hubbard, in which

is, in the court's opinion, as a matter of law, these incidents did not create or contribute to a hostile work environment.

### Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In evaluating a summary judgment motion, the court must construe "all facts and inferences in the light most favorable to the nonmoving party." McFaul v. Valenzuela, 684 F.3d 564, 571 (5th Cir. 2012) (quoting Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010)). However, "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." Id.

### Racially Hostile Work Environment

Title VII prohibits the creation of "a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). See also Vance v. Ball State Univ., --- U.S. ----, 133 S. Ct. 2434,

---

Carr had no involvement, would not be related to earlier harassment by Carr.

2455, 186 L. Ed. 2d 565 (2013) (Thomas, J., concurring) ("The

creation of a hostile work environment through harassment ... is a

form of proscribed discrimination.").  To establish a claim of

hostile work environment, a plaintiff must prove:

> (1) she belongs to a protected group; (2) she was
> subjected to unwelcome harassment; (3) the harassment
> complained of was based on sex; (4) the harassment
> complained of affected a term, condition, or privilege
> of employment; and (5) the employer knew or should have
> known of the harassment in question and failed to take
> prompt remedial action.

Matherne v. Ruba Mgmt., – Fed. App'x, 2015 WL 5155624, 3 (5th Cir.

Sept. 3, 2015) (citations omitted).[5]  Title VII does not reach

"conduct that is merely offensive"—it proscribes only "an

---

[5]      Where the alleged harasser qualifies as a supervisor
under the statute, the plaintiff is not required to satisfy the
fifth element to make out a *prima facie* case of hostile work
environment.  Matherne v. Ruba Mgmt., – Fed. App'x, 2015 WL
5155624, at *3 (5th Cir. Sept. 3, 2015)(citations omitted).  The
Supreme Court has defined "supervisor" for this purpose as an
employee "empowered by the employer to take tangible employment
actions against the victim." Vance v. Ball State Univ., ––– U.S.
––––, ––––, 133 S. Ct. 2434, 2439, 186 L. Ed. 2d 565 (2013).  A
tangible employment action has been defined as "a significant
change in employment status, such as hiring, firing, failing to
promote, reassignment with significantly different
responsibilities, or a decision causing a significant change in
benefits." Vance, 133 S. Ct. at 2442 (quoting Burlington Indus.,
Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d
633 (1998)).  While Carr was obviously Cole's supervisor in the
limited sense that she had "immediate (or successively higher)
authority over the harassment victim," Celestine v. Petroleos de
Venezuela, 266 F.3d 343, 353 (5th Cir. 2001), there is nothing in
the record to suggest that Carr had the kind of authority that
would qualify her as a "supervisor" within the definition of
"supervisor" set forth in Vance for purposes of a Title VII claim
for workplace harassment.

environment that a reasonable person would find hostile or abusive." <u>Matherne</u>, 2015 WL 5155624, at *3.  Accordingly, "[f]or harassment to affect a term, condition, or privilege of employment, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  <u>Smith v. Harvey</u>, 265 Fed. App'x. 197, 202 (5th Cir. 2008) (quoting <u>Harris</u>, 510 U.S. at 21, 114 S. Ct. 367). To be actionable, the work environment must be "'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" <u>Hernandez v. Yellow Transp., Inc.</u>, 670 F.3d 644, 651 (5th Cir. 2012) (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed.2 d 662 (1998)). To determine whether an environment was objectively offensive, courts consider the totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance.  <u>Faragher</u>, 524 U.S. at 787-88, 118 S. Ct. 2275.

Heritage House argues that it is entitled to summary judgment on Cole's hostile work environment claim because, other than the fact that she is in a protected class, Cole cannot establish any of the elements of her hostile work environment claim: she cannot show she was harassed, or that any alleged harassment was based on

11

her race; she cannot show that the terms and conditions of her employment were affected; and, at least as to some of the alleged incidents of harassment, she cannot show that she reported the harassment to defendant and/or that it failed to take prompt corrective action.

Cole's interrogatory responses and the excerpts of her deposition testimony submitted by defendant in support of its motion show that she complains of instances of alleged harassment beginning in August 2013 and continuing through May 2015. Some of the incidents about which she complains are based upon nothing more than suspicion and conjecture. For example, Cole believes that on November 14, 2013, Carr hid her time card, which caused a delay in Cole's receiving her paycheck. However, Cole admits she has no personal knowledge or proof to support this charge. Cole similarly suspects that Carr had something to do with the August 11, 2014 disappearance of some personal items belonging to Cole; but again, she has no proof to support her suspicion.[6]

A number of the incidents identified by Cole as having contributed to a hostile work environment involved Cole's being questioned by Carr regarding resident complaints. These include

---

[6]    Cole claims that after she discovered the items were missing, a private sitter reported to her that she had seen Carr and another attendant looking in her money bag earlier in the day. This is not competent evidence that Carr or anyone else affiliated with Heritage House had anything to do with plaintiff's missing property.

an incident in August 2013 in which Carr called Cole into her
office about a resident's complaint that Cole was not being
friendly enough, apparently as demonstrated by her not smiling
while bathing the resident;[7] a September 19, 2013 incident in
which Carr called Cole into her office in reference to a
resident's complaint that Cole had awakened the resident by
beating on her door (in response to which Cole explained that it
was her job to wake up the residents but that she was not beating
on the resident's door); and a January 21, 2014 incident in which
a resident's daughter contacted Heritage House and complained
about having been called on the phone to encourage the resident to
allow plaintiff and her co-worker to give the resident a shower
after the resident had refused to cooperate with them.  Cole
contends that being constantly called into Carr's office regarding
resident complaints constituted harassment.  Clearly, however,
being advised of and asked to respond to complaints by residents
could not reasonably be found to constitute harassment.  Indeed,
Cole herself agreed in her deposition testimony that when a
resident complains about an attendant, the facility should not
ignore the complaint but should talk to the attendant about it.
She also agreed that this is what Carr was doing.

---

[7]     Cole indicated in her deposition that she doubted the
resident actually made such a complaint; she believes it was
instigated by Carr.  However, she admitted she had no evidence
that Carr fabricated the complaint.

Other incidents that Cole counts as harassment involved her being asked or directed to perform certain work-related tasks which she believes were not within her job description and/or should have been done by someone else or not at all.  In this regard, she complains that in September 2013, Carr, through the supervising nurse, instructed her to go and check a resident after the resident's private sitter had left for the day, which Cole felt was unnecessary[8]. In February 2014, after the activities director had left for the day, Carr told Cole and another attendant to gather the residents for activities and then to pass out newspapers to the residents, which Cole thinks Carr should have done herself, rather than asking the attendants to do it. And in April 2014, Carr asked Cole to serve in the dining room for a resident's birthday party and, when Cole declined on the basis that her uniform was soiled and she could not serve food in a soiled uniform, Carr told her to help clean up after the party. Cole declined again, saying, "What do you have housekeeping for."[9] Carr reported to Administrator Hubbard that Cole had refused to help with the party.  It certainly does not constitute harassment for an employer to occasionally require an employee to perform a

---

[8]     Cole complained to the charge nurse and ultimately, the directive to check the resident was rescinded.

[9]     This is what Cole related in her deposition testimony. While in her response brief, she denies having said this, the court is entitled to rely on her sworn deposition testimony.

14

task that is arguably unnecessary or even improvident, or that may not be strictly within the employee's job description, or which could be done by someone else.

In addition to these incidents, Cole has related the following instances of alleged harassment and intimidation by Carr:

1.  On December 12, 2013, she overheard Carr tell the activities director that she did not want any "black" in the Heritage House Christmas picture.  Cole later learned from talking to residents that Carr had secretly gone to the residents and told them to wear red for the Christmas picture.  The picture was taken and no blacks were in it.

2.  On December 22, 2013, after Carr saw Cole in a resident's room, Cole went to Carr to explain that she had been in the room helping with a resident.  Carr responded by stating in a mean tone, "And you're telling me this for what reason?"  The following day, Carr sent out an "in-service" document which stated that employees are not allowed to use residents' rooms for break times; Cole believes this document was aimed at her.

3.  On January 20, 2014, after Cole refused to speak to Carr (ostensibly because she thought she could keep out of trouble with Carr if she remained quiet), Carr got up in her face and yelled at her that she was being disrespectful and insubordinate by not speaking to her.  Cole reported Carr's behavior to Hubbard,

15

and accused Carr of constantly harassing and bullying her.  Carr
in turn accused Cole of being a bully.  Hubbard told Carr she was
not to scream at Cole.

    4.  On April 3, 2014, Cole and a co-worker, while making
morning rounds, found a resident in need of cleaning and medical
attention who refused their attempt at assistance.  After
informing their supervising nurse, they continued on their rounds.
Carr arrived while they were passing out breakfast trays.  She
sent the co-worker back to the resident's room and began assisting
Cole with passing out the food trays.  When Cole attempted to
correct Carr's work, telling her that if she was going to pass out
trays, then she needed to put the milk, juice and/or coffee with
the trays, Carr responded by throwing a tray back on the cart and
telling Cole, "That's the last time I try to help you."  Cole
later returned to the resident's room and, finding him in the same
condition he had been in earlier, cleaned the resident the best
she could and told others present – including her co-worker and
supervising nurse – to call 911.  Carr called a staff meeting a
few hours later, at which she said she was sick of the "old
staff," that she had had just about enough and that someone had to
be fired.  Cole states she was the only "old staff" present at
this meeting and felt that these comments were directed at her.

    5.  On April, 22, 2014, Carr sent Cole out of a mandatory

staff meeting, telling her she did not need to be there since she was not licensed.  After the meeting, Cole went to the RN who held the meeting and was allowed to sign the meeting form and given credit for having attended.  Cole states that after reporting Carr's conduct to Hubbard, Hubbard responded that Carr had no right to exclude her from a mandatory staff meeting.

6.  On May 4, 2014, Carr refused Cole's timely and proper request for time off while giving time off to other employees who, unlike Cole, did not have accrued vacation time. When Cole complained to Hubbard and the office manager, Hubbard said she would in-service Carr regarding vacation requests and time off.

7.  On May 27, 2014, Cole had a confrontation with a resident's private sitter in which the private sitter refused to allow Cole to assist the resident and put her hand in Cole's face and told her to "zip it and adjust your attitude."  While Cole reported the incident to her nursing supervisors, who were later questioned by Carr regarding the incident, Carr never questioned Cole about the incident.  When the same private sitter made another comment to Cole several days later, Cole reported the original confrontation to Hubbard.  After Hubbard questioned Carr, who acknowledged she was aware of the incident, Hubbard announced that the private sitter would not be allowed to return to the facility.  Cole complains of Carr's failure to take action against

17

the private sitter sooner and asserts that this incident is
evidence that "[n]ot only does Kim Carr harass and intimidate me,
she allows others to do the same."

8.   In April 2015, Carr called her or referred to her as a
"black nigger."  Cole has presented no evidence regarding this
allegation.  Defendant, however, has presented deposition excerpts
which reflect that Cole, in the context of explaining why she
believed that a May 5, 2015 disciplinary warning issued by Hubbard
was contrived, testified that she went to Hubbard prior to May 5,
2015 and told her that Carr had called her a name.  She testified
that the name Carr had called her was "black nigger"; but she also
testified that she had declined to tell Hubbard what name Carr had
called her.  There was nothing in the testimony presented by
defendant to explain any of the circumstances surrounding Carr's
alleged use of this racial epithet.

Of all these alleged instances of alleged objectionable
conduct, only two can reasonably be tied to Cole's race: the
Christmas picture incident and the "black nigger" comment.  The
other incidents "might cause offense or indicate strife between
[Cole] and [Carr], but they are not evidence of race-based
harassment."  Cavalier v. Clearlake Rehabilitation Hosp., Inc.,
306 Fed. App'x. 104, 107 (5th Cir. 2009) (citing Indest v. Freeman
Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (stating that
"[d]iscourtesy or rudeness, offhand comments and isolated

incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment") (internal quotations omitted)).  "Though [Cole] may believe that all [these] incidents were motivated by racial animus, subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment." <u>Id</u>.  In fact, however, while Cole does aver a racial motivation, she testified that all the Heritage House resident attendants are African-American and yet she, and she alone, was singled out for mistreatment by Carr.

The two incidents that can be tied to race, considered alone or in conjunction with the other challenged conduct, plainly do not rise to the level of severity or pervasiveness required to support a claim for a hostile work environment.  <u>See</u> <u>Buisson v.</u> <u>Bd. of Sup'rs of Louisiana Cmty. & Technical Coll. Sys.</u>, 592 F. App'x 237, 245 (5th Cir. 2014) (supervisor's use of bigoted term indicated discriminatory intent but "its one-time utterance [was] insufficient—even when combined with [his] other behavior—to create a [race-based] hostile work environment" and "pales in comparison, both in severity and frequency, to the kinds of verbal harassment that this Court and other circuits have held would support a Title VII, hostile-work-environment claim.").[10]

_____

[10]   The court cited the following examples:
<u>Walker v. Thompson</u>, 214 F.3d 615, 619–22 (5th Cir. 2000) (holding that a hostile work environment claim survived summary judgment where evidence demonstrated years of

19

Moreover, Cole has offered no evidence that Carr's conduct, including her alleged racial comment(s), prevented her from doing her job, and the facts do not support such an inference.  Id. at 246.  Accordingly, plaintiff's claim for hostile work environment based on race will be dismissed.

Retaliation

To succeed on her retaliation claim, Cole must show: (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action.  Hernandez, 670 F.3d at 655.  In the retaliation context, to prove an adverse employment action occurred, "a plaintiff must show that a reasonable employee would have found the challenged action

---

inflammatory racial epithets, including "nigger" and "little black monkey"); Daniels v. Essex Group, Inc., 937 F.2d 1264, 1266 (7th Cir. 1991) (holding that the plaintiff survived summary judgment where the plaintiff was subjected to "nigger jokes" for a ten-year period and the plaintiff's workstation was adorned with "a human-sized dummy with a black head"); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 182 (4th Cir. 2001) (reversing summary judgment where the plaintiff suffered "incessant racial slurs" including "nigger" and "dumb monkey"), with Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348 (5th Cir. 2007) (finding that the evidence was insufficient to establish a hostile-work-environment claim where a supervisor's comments about inner-city "ghetto children" ceased upon plaintiff's request, and the supervisor's other arguably racially offensive comments were "isolated incidents"). Buisson v. Bd. of Sup'rs of Louisiana Cmty. & Technical Coll. Sys., 592 F. App'x 237, 245 (5th Cir. 2014)

20

materially adverse, which in this context means it well might have
dissuaded a reasonable worker from making or supporting a charge
of discrimination." Burlington N. & Santa Fe Ry. Co. v. White,
548 U.S. 53, 60, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

"The purpose of this objective standard is 'to separate
significant from trivial harms' and 'filter out complaints
attacking the ordinary tribulations of the workplace.'" Stewart,
586 F.3d at 331 (quoting Burlington N., 548 U.S. at 68, 126 S. Ct.
2405). See also Burlington N., 548 U.S. at 68 ("An employee's
decision to report discriminatory behavior cannot immunize that
employee from those petty slights or minor annoyances that often
take place at work and that all employees experience."). "Thus,
even under the more liberal definition of adverse employment
action that applies to retaliation claims, 'allegations of
unpleasant work meetings, verbal reprimands, improper work
requests, and unfair treatment do not constitute actionable
adverse employment actions.'" Richardson v. Miss. Dept. of Human
Servs., Civ. Action No. 3:10cv198-DPJ-FKB, 2012 WL 568285, at *6
(S.D. Miss. Feb. 21, 2012) (quoting King v. Louisiana, 294 F.
App'x 77, 85 (5th Cir. 2008)). See also Earle v. Aramark Corp.,
247 Fed. App'x 519, 524 (5th Cir. 2007) (excluding employee from
training lunch, subjecting her to disciplinary write-ups and
micro-managing her performance are not materially adverse
employment actions); Grice v. FMC Techs, Inc., 216 Fed. App'x 401,

21

404, 407 (5th Cir. 2007) (allegation that plaintiff was watched more closely than other employees was sort of "trivial" incident that would not dissuade a reasonable employee from reporting discrimination).

In the case at bar, the evidence does not support a finding that Cole suffered any materially adverse employment action. Cole's performance was questioned on occasion, but she was never reprimanded or disciplined.  Moreover, while Cole relates that Carr's treatment of her was both unfair and unpleasant, the treatment she received plainly does not rise to the level of adverse employment actions.  For this reason, the court concludes that Heritage House is entitled to summary judgment on her claim of retaliation.

Conclusion

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 13th day of October, 2015.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE


22